**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **GERALD B.,[1]** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:21-CV-41** |
| | ) | |
| **KILOLO KIJAKAZI,[2] Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Gerald B. ("Gerald") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1381f. Gerald alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess and accommodate his mental impairments and failing to properly consider his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Gerald's Motion for Summary Judgment (Dkt. 13) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 15).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

the Commissioner's conclusion that Gerald is not disabled under the Act.  <u>Mastro v. Apfel</u>, 270

F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the court to "look[] to an

existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the

[ALJ's] factual determinations." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (quoting

<u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  "Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance."  <u>Craig</u>

<u>v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  "The threshold for such

evidentiary sufficiency is not high," <u>Biestek</u>, 139 S. Ct. at 1154, and the final decision of the

Commissioner will be affirmed where substantial evidence supports the decision.  <u>Hays v.</u>

<u>Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## <u>CLAIM HISTORY</u>

Gerald filed for SSI on April 23, 2015, claiming that his disability began on that date.

R. 18, 379.  On May 1, 2018, ALJ Michael Dennard held an administrative hearing, at which

Gerald did not appear, but was represented by counsel. R. 93–109.  The ALJ entered an

unfavorable ruling denying Gerald's claim on July 3, 2018. R. 148–167.  The Appeals Council

remanded Gerald's claim upon review, finding that the ALJ's decision did not address whether

Gerald constructively waived his right to appear at the administrative hearing. R. 176.  Pursuant

to the remand order, the ALJ held another administrative hearing on February 12, 2020, and

granted Gerald's request to be sent for a psychological consultative examination. R. 65–91.  On

July 1, 2020, the ALJ held a third administrative hearing, at which Gerald testified and was

represented by counsel. R. 42–64.  Vocational expert Gerald Wells also testified during the

hearing. <u>Id.</u>

On July 24, 2020, the ALJ entered a new decision analyzing Gerald's claims under the familiar five-step process,[3] and denying his claim for benefits. R. 15–33. The ALJ determined that Gerald suffered from the severe impairments of bipolar disorder, borderline personality disorder, borderline intellectual functioning, attention deficit hyperactivity disorder, anxiety disorder, and post-traumatic stress disorder. R. 18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19–22.  The ALJ concluded that Gerald retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: perform simple, routine, repetitive tasks with simple short instructions and simple work-related decisions; interact occasionally with supervisors and have occasional, superficial interaction with coworkers, with "superficial" defined to mean that he can do things such as tell the time of day or provide directions to the bathroom; no interaction with the public; tolerate occasional workplace changes; will be off-task 5% of the time in an eight-hour workday, in addition to normal breaks; and will be absent from work one day per month. R. 23.

The ALJ determined that Gerald had no past relevant work, and that he could perform jobs that exist in significant numbers in the national economy, such as janitor/cleaner, order picker and housekeeper. R. 32. Thus, the ALJ concluded that Gerald was not disabled. Id. Gerald

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

appealed the decision and on December 17, 2020, the Appeals Council denied his request for review. R. 1–6.   This appeal followed.

## ANALYSIS

Gerald asserts that the ALJ failed to properly consider the March 11, 2020 opinion of consultative physician Gilbert Todd Vance, Ph.D. Pl. Br. Summ. J. pp. 15–19.   Gerald also asserts that the ALJ failed to properly consider his moderate limitations in concentration, persistence and pace, social interaction, and adapting or managing himself. Id. at p. 20.   Gerald alleges that the ALJ's RFC only addresses his skill level and does not consider his ability to sustain work activity over an 8-hour workday. Id.

### Medical History

Gerald graduated from high school and received special education during his school years. R. 23, 74.  Gerald alleges that he has problems with impulse control and anger management, does not get along well with others, and can only pay attention for five seconds before getting distracted. Gerald testified at the administrative hearing that he recently got out of jail, feels unmotivated, and has problems getting along with people due to anger issues. R. 74– 81.  Gerald testified that he has flashbacks and nightmares from PTSD, has trouble reading and writing and difficulty focusing. Id.  He has been living at the Rescue Mission after his release from jail and goes to the library during the day to use the computer and talk to his girlfriend. R. 82–84.

Gerald has a long history of mental health issues, including long-term admission to a residential treatment center as a teenager, and several stints in jail. Gerald's mental health treatment has been sporadic given his lack of health insurance and episodic incarceration. Gerald received inpatient treatment under a temporary detention order in January 2015 after

physically attacking his fiancée and threatening his roommate. R. 818–21.  He was diagnosed with impulse control disorder, personality disorder, and probable borderline intellectual functioning. R. 894–96.  In April 2015, Gerald was evaluated by Mark Kilgus, M.D., and complained of unstable moods, anxiety, and insomnia. R. 1034. Dr. Kilgus diagnosed mood disorder with generalized anxiety, possible borderline intellectual functioning, rule out PTSD, history of ADHD. Id. He noted that Gerald was hospitalized twice in the previous two months for suicidal ideations, has a history of sexual trauma, and is a sex offender.  Dr. Kilgus's impression was a 35-year-old man with a history of bipolar disorder with anxiety and trauma spectrum symptoms, with limited support. R. 1035.  Dr. Kilgus recommended medication for mood stabilization, anxiety, chronic insomnia, and agitation. R. 1034.

On March 21, 2016, Jeffrey Luckett, Ph.D., examined Gerald and provided a consultative report. R. 1043.  Gerald had not taken his psychotropic medications since mid-2015. Dr. Luckett performed an intellectual assessment and determined that Gerald's perceptual reasoning abilities were in the average range of functioning; his verbal comprehension, working memory and full-scale IQ abilities were in the low average range of functioning; and his processing speed abilities were in the borderline range of functioning. R. 1048.  Dr. Luckett assessed dysthymic disorder with early onset; anxiety disorder; intermittent explosive disorder; and personality disorder with evidence of avoidant and borderline personality traits. Id. Dr. Luckett determined that Gerald could perform simple, repetitive tasks without difficulty; would have difficulty with more complex job requirements due to his lower IQ abilities; could maintain regular attendance in the work place and work on a consistent basis without the need for special supervision; could complete a normal workday/workweek without interruption from any type of psychiatric condition; could accept instructions from supervisors if provided in a respectful manner; could

5

interact with coworkers but may have some difficulty working directly with the public; and could deal with the typical stresses involved in competitive work. R. 1049.

In February 2017, Gerald was referred to Blue Ridge Behavioral Healthcare by the Rescue Mission and appeared in casual dress with normal grooming, was calm and cooperative, had no unusual movements or psychomotor changes, his speech was normal, he had a flat affect and euthymic mood. R. 1065. Gerald was oriented to time, place, person and situation, his long-term memory was intact, and his insight/judgment was fair.  The provider noted that Gerald was alert, oriented, and cooperative during assessment; and "he presented as flat with some memory impairment and slightly delayed however was able to answer most questions appropriately." R. 1066. Gerald denied recent thoughts of harm to self or others, reported difficulty with establishing and maintaining a social support system, and reported no local or familiar supports. Id. The provider assessed major depressive disorder with rule out unspecified bipolar disorder. R. 1078. On February 15, 2017, Gerald was medically evaluated upon intake to Blue Ridge Regional Jail and reported not taking medications due to lack of insurance. R. 1087.

In November 2019, Gerald underwent a psychiatric evaluation in jail and reported difficulty sleeping, occasional nightmares, mood lability, irritability, depressed mood, intrusive and distressing memories of abuse, excessive worry, and hopelessness. R. 1100.  Gerald was disheveled, had appropriate speech, mood, and affect, his thoughts were coherent and appropriate, he was oriented with below average intelligence and intact memory. R. 1100–01. The provider diagnosed PTSD and started medication for mood and anxiety. R. 1102.

On March 11, 2020, Gilbert Todd Vance, Ph.D., examined Gerald and provided a consultative report. R. 1117–19.  Gerald was living at the Rescue Mission, reported that he can complete activities of daily living without assistance, has very few friends, and struggles to

complete tasks in a timely manner because he loses interest. R. 1117. Gerald's appearance was mildly disheveled, his behavior and speech were normal, he made adequate eye contact, he had normal thought processes and thought content, and had adequate insight. R. 1118. Dr. Vance diagnosed major depressive disorder, antisocial personality disorder, and noted that developmental trauma very likely plays a role in his behavioral and emotion regulation problems. R. 1118. Dr. Vance concluded that Gerald can perform simple, repetitive tasks due to his emotional state; he would likely struggle to maintain regular attendance, perform work activities on a consistent basis or complete a normal workday or workweek without interruptions; he may need special or additional supervision, depending on the nature of the task required; he may struggle to accept instructions from supervisors, given his history of conflict with others; he would likely struggle to interact effectively with coworkers and the public; and he would struggle to handle the usual stresses encountered in competitive work. R. 1119.

In a medical source statement, Dr. Vance noted that Gerald has mild impairments with understanding, remembering and carrying out complex instructions, noting that his major depressive disorder and anti-social personality disorder lead to distraction and loss of focus that may affect his abilities when under stress. R. 1121. Dr. Vance determined that Gerald has moderate impairments interacting with the public, supervisors, co-workers and responding to usual work situations. R. 1122. He noted that Gerald may struggle with concentration when under stress. Id.

On April 23, 2020, Gerald visited Desiree Inman, D.O., as a new patient, complaining of bipolar disorder and depression. R. 1125. Gerald reported feeling well-controlled on his medications and feeling a "little more depressed lately given living situation." Id. Gerald reported living at the Rescue Mission and that he planned to move in with his girlfriend when

she finishes rehab. Id. Dr. Inman noted that Gerald was alert; had clear speech; answered

questions appropriately; and was well-oriented and communicative. R. 1127. Dr. Inman assessed

bipolar affective disorder, major depressive disorder, and PTSD. She refilled his medications and

referred him to psychiatry. Id.

Gerald followed up in late May and early June, and reported mood swings and other

symptoms of bipolar disorder including depressed mood, difficulty concentrating, feeling

overwhelmed, etc.  He presented as alert, cooperative, oriented with normal speech, okay mood,

linear thought processes, fair concentration, attention, and memory. R. 1142, 1147.

On June 9, 2020, Gerald followed up and noted that his mood is stable and most of his

mood and sleep issues stem from his social situation of living at the Rescue Mission and lack of

control. R. 1136. He was instructed to increase his medication and that his best chance of

improvement is to change his social situation. Id. Gerald reported volunteering at the Rescue

Mission, that people are "snotty" with him, and he gets into verbal fights. R. 1137.

On June 16, 2020, Gerald had a telephone appointment and reported improvement in his

mood swings, anxiety, and overall functioning. R. 1133.  He reported replacement activities and

volunteering at the Rescue Mission, which helped keep him distracted and occupied.  Gerald

reported waking up earlier in the morning due to new responsibilities and having improved sleep.

R. 1134.

On June 30, 2020, Gerald had a telephone encounter and reported improvement of his

mood swings, anxiety, and overall functioning. R. 1130. He continued to experience anger but

was willing to utilize breathing exercises to manage his symptoms. He reported anxiety

symptoms daily.  Katherine Lee, LPC, noted that Gerald had an okay mood, appropriate affect,

normal speech, was alert, oriented and cooperative, his thought processes and content were intact

and appropriate. She noted his progress as "improved," and discussed behavioral and social

strategies to maintain a healthy routine, self-care and seek social support. R. 1131.

On July 30, 2015, state agency psychologist Howard Leizer, Ph.D., reviewed Gerald's

records and determined that he suffered from severe impairments of affective disorders,

personality disorders and borderline intellectual functioning, leading to moderate impairments

with the domains of activities of daily living, maintaining social functioning, and maintaining

concentration, persistence, or pace. R. 117–121. Dr. Leizer determined that Gerald could perform

simple, unskilled work with no public contact and limited contact with supervisors or co-

workers. R. 121.  On April 1, 2016, state agency physician Alan Entin, Ph.D., reviewed Gerald's

records and agreed with Dr. Leizer's conclusions. R. 138–140.

### ALJ Decision

The ALJ reviewed Gerald's testimony and medical records in detail in his opinion. The

ALJ reviewed Gerald's treatment history in detail, noting his long history of psychiatric

treatment, including long-term admission to a residential treatment center as a teenager and

several stints in jail. The ALJ acknowledged that Gerald's mental health treatment has been

sporadic given his lack of health insurance and episodic incarceration. R. 25.

 The ALJ noted that based on Gerald's persistent signs and symptoms over time, his

mental impairments are "severe," and thus, the ALJ "assigned corresponding work-related

limitations" to address those ongoing issues. R. 26.  The ALJ determined that further limitations

are not warranted, considering Gerald's overall course of treatment and response to treatment

over the period at issue.  Specifically, the ALJ noted that Gerald had no recent inpatient

admissions or emergency room visits; that his mental health providers managed his symptoms

conservatively in 2015 and 2019; that there is no evidence of a serious decline in Gerald's

9

overall mental health during his latest period of incarceration; that Gerald reported reduced

symptoms in December 2019; that he was stable on his current medications in April 2020 and

remained "stable" in May 2020; that Gerald reported a good response to counseling and that his

mood and sleep issues stemmed from his living situation at the Rescue Mission; that Gerald

reported improvement of his mood swings, anxiety and overall functioning in June 2020 due to

medication use and coping skills; that Gerald was volunteering and keeping himself distracted

and occupied; that although Gerald reported ongoing anger and anxiety, he continued to have a

good response to medication management in general. R. 26–27.

The ALJ noted that Gerald's mental status examinations were fairly normal overall,

citing specific supporting evidence from Gerald's March 2016 consultative examination through

his June 2020 treatment notes. R. 27. The ALJ concluded that, "considered in the aggregate, the

objective medical evidence further supports the conclusion that the claimant can perform the

basic mental demands of unskilled work, within the above parameters." R. 27.

The ALJ reviewed Dr. Luckett's consultative opinion and gave it significant weight,

noting that Dr. Luckett's conclusions are supported by the consultative examination results, such

as Gerald's ability to perform simple cognitive tasks adequately, with no evidence of inattention,

even though he seemed moderately depressed and had low-average to borderline IQ scores.

R. 28.  The ALJ noted that Dr. Luckett's assessment is also largely consistent with Gerald's

overall presentation in other encounters.  The ALJ found Dr. Luckett's conclusion that Gerald

could maintain regular attendance at work and complete a normal workday and workweek

consistent with his recent volunteering activity at the Rescue Mission. R. 28.  The ALJ imposed

more restrictive limitations than Dr. Luckett "in a few areas based on evidence that Dr. Luckett

did not have an opportunity to review, such as the abnormal mental status examination findings

previous noted, together with the claimant's persistent mental health complaints as previously reviewed." R. 28.

The ALJ reviewed Dr. Vance's consultative opinion and gave it "some weight to the extent it is supported and consistent with other evidence, but has not been adopted in its entirety." R. 28.  The ALJ found Dr. Vance's conclusion that Gerald is limited to "simple, repetitive tasks," supported and consistent with other evidence. The ALJ did not adopt the remainder of Dr. Vance's opinion because "it is not well supported or quantified, and is inconsistent with other evidence."  R. 29.  The ALJ found statements that Gerald "would likely" or "may" struggle to be uncertain terms.  The ALJ concluded that Gerald "remains capable of performing the basic mental demands of competitive, remunerative, unskilled work. Accordingly, the remainder of Dr. Vance's assessment is given less weight, and is not adopted here." R. 29.

The ALJ also reviewed the state agency psychological consultant's mental assessments and gave them "some weight," but did not adopt them in their entirety. R. 29.  The ALJ found that most of the state agency consultants' proposed limitations were supported and consistent with the evidence, including Gerald's relatively intact presentation in the 2016 and 2020 consultative examinations. R. 29. The ALJ stated, "[t]he conclusion that the claimant 'is capable of performing, simple, unskilled work with no public contact and limited contact with supervisors and coworkers,' is also consistent with the claimant's grossly stable mental status over time in the setting of limited and conservative treatment. R. 30.  However, the ALJ found the proposed moderate limitation in setting realistic goals or making plans independently of others not well supported, as it appeared to rely on the fact that Gerald reported being homeless as a young adult.  The ALJ noted that Gerald has not complained of any abnormal reliance on

others to his own medical providers and described an overall improvement in his functioning

with medication adherence and coping skills.  The ALJ noted that Gerald seems to be more

subjectively limited when it comes to tolerating stress, and that his recent volunteering activities

at the Rescue Mission and trips to the library to use the computer "tend to suggest that the

claimant is able [to] set realistic goals and make plans independently of others."  Thus, the ALJ

determined that the RFC limitations concerning workplace changes, decision-making, reduced

social interactions, and expectable absences form work more appropriately accommodate

Gerald's moderate limitation in adapting or managing himself. R. 30.

The ALJ also considered an "extremely dated opinion" from a consultative examination

performed by David Leen, Ph.D., in October 2012, and gave it little weight due to its remoteness

to the period at issue. R. 30.

### Consultative Opinion

Gerald asserts that the ALJ failed to explain how Gerald's ability to act appropriately

with medical providers undermined Dr. Vance's opinion; and erred by describing Gerald's

presentation at exams and mental health appointments as largely normal. Pl. Br. Summ. J. p. 17.

Gerald also argues that the ALJ failed to explain how his recent volunteer activities at the Rescue

Mission undermined Dr. Vance's opinions regarding his ability to maintain attention and handle

stress. Id. at 18.

The social security regulations require an ALJ to evaluate a consultative examiner, such

as Drs. Luckett and Vance, using the factors outlined in the regulations, and to expressly indicate

and explain the weight given to their opinions.[4] See 20 C.F.R. §§ 404.1527(c),

416.927(c).  Consultative examiners do not constitute treating sources under the regulations, and

---

[4] Gerald's claim was filed prior to March 27, 2017, and is thus governed by 20 C.F.R. § 404.1527.

thus their opinions generally do not warrant controlling weight. See 20 CFR 404.1527(c)(2),

416.927(c)(2); Carter v. Colvin, 1:15CV00981, 2016 WL 4487778, at *11 (M.D.N.C. Aug. 25,

2016). However, the ALJ must nevertheless evaluate consultative opinions using the factors

outlined in the regulations, and expressly indicate and explain the weight accorded to

such opinions. See 20 CFR 404.1527(c), 416.927(c). The following factors must be considered to

determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and

frequency of examination; (2) the nature and extent of the treatment relationship; (3) the

opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole;

and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)–

(5). "While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to

discount a medical opinion from a treating physician, it must nonetheless be apparent from the

ALJ's decision that he meaningfully considered *each* of the factors before deciding how much

weight to give the opinion." Dowling v. Comm'r, 986 F.3d 377, 385 (4th Cir. 2021).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate

and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for

remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th

Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not

support a particular opinion means 'the analysis is incomplete and precludes meaningful

review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016)

(quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348,

2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain

the conclusions reached and identify the record evidence which supports those conclusions. Only

then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Here, the ALJ appropriately considered the required factors and explained why he adopted some of Dr. Vance's conclusions and declined to adopt others.  The ALJ specifically indicated which portion of Dr. Vance's opinion he found inconsistent with the evidence and explained his reasoning.

The ALJ reviewed Dr. Vance's consultative opinion and gave it "some weight to the extent it is supported and consistent with other evidence, but has not been adopted in its entirety." R. 28.  The ALJ found Dr. Vance's conclusion that Gerald is limited to "simple, repetitive tasks," to be supported and consistent with other evidence.  The ALJ noted that during the consultative examination, Gerald was able to correctly repeat five digits forward and three digits backward; he was able to spell the word "world" backward; he was able to complete five items on serial threes; he was able to complete addition, subtraction and multiplication problems; he could correctly repeat five out of five words on an immediate recall task, and three out of five words on a delayed recall task.  The ALJ also noted that Gerald performed cognitive tasks adequately during his March 2016 consultative examination.  R. 28.  The ALJ recognized that Gerald had disorganized thought processes and impaired short-term memory at one encounter in early 2017, but "these appear to be isolated findings." R. 29.  Thus, the ALJ agreed that Gerald can perform simple, repetitive tasks.

The ALJ did not adopt the remainder of Dr. Vance's opinion because "it is not well supported or quantified, and is inconsistent with other evidence." R. 29.  The ALJ found statements that Gerald "would likely" or "may" struggle to be uncertain terms. He found those limitations inconsistent with Gerald's largely normal presentation during his consultative examinations and his recent treatment encounters. R. 29.  The ALJ also noted that Gerald's recent volunteering activities at the Rescue Mission "demonstrate at least some capability in the

areas identified by Dr. Vance, such as maintaining attendance in the workplace and handling the usual stresses encountered in competitive work." R. 29.  The ALJ recognized that Gerald reported having verbal fights with people who were "snotty" to him, but that he denied getting into physical fights and said he felt safe despite the confrontation. The ALJ also noted that Gerald acted appropriately with his medical providers.  Thus, the ALJ concluded that Gerald "remains capable of performing the basic mental demands of competitive, remunerative, unskilled work.  Accordingly, the remainder of Dr. Vance's assessment is given less weight, and is not adopted here." R. 29.

Gerald disagrees with the ALJ's characterization of his presentation at mental health appointments as "largely normal."  Pl. Br. Summ. J. p. 17.  The ALJ explained this finding in detail in his opinion, noting specific instances of Gerald presenting with minimal abnormal mental health symptoms during his consultative and treatment examinations. See R. 27.  The ALJ's explanation is supported by multiple examples set forth in the decision.  Gerald's disagreement with the ALJ's characterization of his mental health presentation does not deprive the ALJ's conclusion of substantial evidence.

Gerald also argues that the ALJ failed to explain how his ability to act appropriately with his medical providers and his recent volunteer activities undermine Dr. Vance's opinion. Pl. Br. Summ. J. pp. 17–18.  The ALJ provided a detailed explanation regarding why he found portions of Dr. Vance's assessment unsupported, not well-quantified and inconsistent with other evidence. R. 28–29.  Included in the explanation were Gerald's largely normal presentation during his consultative examinations and recent treatment encounters; his recent volunteering activities; and his appropriate interaction with medical providers. R. 29.  The ALJ noted that Gerald's volunteering activities, "demonstrate at least some capability in the areas identified by

Dr. Vance, such as maintaining attendance in the workplace and handling the usual stresses encountered in competitive work." R. 29.  The ALJ noted that Gerald reported verbal fights during his volunteering, but that he did not engage in physical fights and felt safe. The ALJ did not rely upon either of these reasons alone to find portions of Dr. Vance's opinion unsupported, but rather, found for "these and other reasons previously explained," that Gerald remains capable of performing the basic mental demands of competitive, remunerative, unskilled work. R. 29.

The ALJ's decision not to adopt portions of Dr. Vance's opinion relating to Gerald's ability to maintain regular attendance, perform work activities on a consistent basis, and interact with supervisors and co-workers is further supported by the opinions of Drs. Luckett and the state agency psychologists.  Specifically, consultative examiner Dr. Luckett determined that Gerald could maintain regular attendance in the workplace, work on a consistent basis, complete a normal workday and workweek, and interact with coworkers and supervisors.  R. 1049.

The ALJ considered Dr. Vance's opinion, together with the evidence in the record, and provided a reasonable explanation as to the weight he gave the opinion. Accordingly, I find that substantial evidence supports the ALJ's evaluation of Dr. Vance's opinion.

### **Mental RFC**

Gerald asserts that the ALJ's RFC only addresses his skill level of work and does not address his ability to sustain work activity over an eight-hour workday. Pl. Br. Summ. J. p. 20. Gerald also argues that the ALJ failed to explain how the RFC accommodates his moderate limitations with concentration, persistence, or pace; or his moderate limitations interacting with others. Id. at 22.

The ALJ determined that Gerald had a moderate impairment of interacting with others, noting that Gerald alleged "fairly extreme" difficulties in this area which are partially consistent

with the medical evidence. R. 20. The ALJ noted Gerald's history of interpersonal conflicts with his girlfriend, verbal fights while volunteering, persistent irritability, and appropriate interactions with his treatment providers. The ALJ also noted Gerald's normal thought processes and content, and cooperative and appropriate demeanor during treatment visits. Overall, the ALJ determined that Gerald's moderate limitation in the domain of interacting with others is accommodated by restrictions of no interaction with the public; occasional interaction with supervisors; and occasional, superficial interaction with coworkers, defining "superficial" as telling the time of day or providing directions to the bathroom. R. 21.

Regarding the domain of concentration, persistence, or maintaining pace, the ALJ determined that Gerald had a moderate impairment, noting that his poor sleep, low energy, borderline intellectual functioning, and ADHD would interfere with this domain. The ALJ determined that the evidence reflected scattered objective evidence of functional loss in this area, such as disorganized thought processes during a February 2017 encounter. The ALJ found that most of the objective medical evidence related to concentration, persistence, or maintaining pace was fairly normal overall.  The ALJ cited the March 2016 consultative examination where Gerald had no evidence of inattentiveness, impulsivity or hyperactivity; treatment notes where his concentration and attention were fair; and providers' descriptions of Gerald as alert, oriented, with no indication of inattention, lethargy, etc. R. 21.  The ALJ determined that Gerald's moderate limitation in this domain is accommodated by a restriction to simple tasks, off-task behavior and absences. Id.

In Shinaberry v. Saul, the Fourth Circuit clarified that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform

17

simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th

Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does

"not impose a categorical rule that requires an ALJ to always include moderate limitations in

concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast,

Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include

only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or

pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine

tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc.

Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not

broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace

always translates into a limitation in the RFC, but instead underscores the ALJ's duty to

adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176

(emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what

evidence he found credible and specifically applying the law to the record).

     Gerald asserts broad, non-specific claims that the ALJ's decision fails to properly account

for his moderate impairments with interaction with others and concentration, persistence or pace,

and fails to include the necessary explanation and "logical bridge" between the evidence and

ALJ's decision.  I disagree. Contrary to Gerald's bald assertion, the ALJ explained his reasoning

and the RFC in detail, including specific references to the medical records and opinions. The

ALJ considered Gerald's mental health complaints, his very sporadic mental health treatment, his

generally normal mental status exams, his activities, the consultative examiners' opinions, and

the state agency opinions in the record. The ALJ concluded that Gerald had moderate

impairments with the domains of concentration, persistence and pace and social interaction; the

ALJ found Dr. Luckett's opinion as to Gerald's specific mental work abilities persuasive; the ALJ adopted portions of Dr. Vance's opinion and the opinions of the state agency psychologists, and the ALJ provided detailed accommodations for Gerald's impairments with concentration, persistence or pace and social interaction in the RFC. Thus, the ALJ provided the required explanation and the logical bridge for this court to review his decision.

This is not a situation like <u>Mascio</u>, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Unlike the claimant in <u>Mascio</u>, the evidence here supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, Gerald can perform simple, routine, repetitive tasks with simple, short instructions and simple work-related decisions; tolerate occasional workplace changes; would be off-task 5% of the time and would be absent from work one day per month. The ALJ explained why Gerald's moderate limitations in concentration, persistence, or pace, and interacting with others did not translate into a limitation in the RFC beyond that imposed.[5]

Gerald asserts that the ALJ failed to address his ability to sustain work over an eight-hour workday, and that the RFC addresses only skill level and not an ability to stay on task. The ALJ explained that despite Gerald's moderate impairment with concentration, persistence or pace, his records reflected scattered evidence of inattentiveness, impulsivity or hyperactivity. The ALJ gave significant weight to Dr. Luckett's consultative opinion that Gerald would be able to complete a normal workday/workweek without interruption from any type of psychiatric condition." The ALJ also gave weight to the state agency psychologists' finding that Gerald

---

[5] Gerald also argues that the ALJ failed to provide appropriate questions to the vocational expert. However, the ALJ's hypothetical questions were clear and with support in the record. I find the ALJ's RFC findings were supported by substantial evidence and the ALJ presented an appropriate question to the vocational expert.

could perform sustained work activities.  Thus, the ALJ considered and explained his conclusion that Gerald could sustain work for an eight-hour day, and that Gerald would be off task 5% of an eight-hour workday.

Thus, unlike in <u>Mascio</u>, the court here is not left to guess at the ALJ's decision-making process. The ALJ relied upon Gerald's testimony, his treatment records, and the opinions of the reviewing and consulting physicians to find that despite Gerald's moderate mental health impairments, he could perform a limited RFC. The ALJ reviewed Gerald's record evidence in detail, and then explained how the RFC accommodated each of Gerald's mental health limitations in the analysis. Thus, the ALJ's analysis of Gerald's mental health impairments is supported by substantial evidence.

### **<u>Subjective Allegations</u>**

Gerald argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Pl. Br. Summ. J. p. 24.  Gerald takes issue with the ALJ's reliance upon his ability to perform a variety of daily activities and argues that the ALJ failed to explain how the evidence cited supports his RFC.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. <u>Id.</u> at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. <u>Id.</u> §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the

entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required to find the claimant disabled." Arakas v. Comm'r, 983 F.3d 83, 95 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ considered Gerald's allegations of symptoms, and found that his impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms are not fully supported. R. 25. The ALJ supported this conclusion with a narrative discussion of Gerald's lengthy psychiatric treatment history; his sporadic mental health treatment and incarcerations; his ongoing mood and anxiety symptoms; his response to treatment, and his stability with medication management; his improved mood, anxiety and overall functioning with medication and use of coping skills; his fairly normal mental status examinations; his consultative examination findings and presentation; and the consultative and reviewing opinions in the record. R. 24–30.

Gerald specifically asserts that the ALJ failed to qualify the extent to which he performed daily activities, including going to the library, using the computer to talk to his girlfriend and play games, and his volunteer activity at the Rescue Mission. Pl. Br. Summ. J. p.

21

25. Gerald alleges that the ALJ failed to acknowledge that he performs daily activities

intermittently at his own pace, citing to Arakas v. Comm'r, and Brown v. Commissioner, 873

F.3d 251 (4th Cir. 2017) for the proposition that an ALJ may not consider the type of activities

a claimant can perform without also considering the extent to which he can perform them. Id.

 The ALJ made minimal references to Gerald's daily activities, noting, "the claimant

testified that he has been living at the Rescue Mission since his release from jail. During the

day, the claimant goes to the library and uses the computer to talk to his girlfriend and play

games. If he gets board or distracted, he switches to a different game." R. 24. The ALJ also

referenced Gerald's activities when reviewing the consultative opinions, noting that Dr.

Luckett's "conclusions that the claimant would be able to maintain regular attendance at work,

and complete a normal workday and workweek, are also consistent with the claimant's recent

volunteering activity at the Rescue Mission." R. 28. The ALJ also stated that Gerald's "recent

volunteering activities at the Rescue Mission demonstrate at least some capability in the areas

identified by Dr. Vance, such as maintaining attendance in the workplace and handling the

usual stresses encountered in competitive work." R. 29. When reviewing the state agency

opinions, the ALJ found that Gerald's recent volunteering activities at the Rescue Mission and

trips to the library to use the computer "tend to suggest that the claimant is able to set realistic

goals and make plans independently of others." R. 30.

 The regulations specifically provide that an ALJ may consider a claimant's daily

activities, among other factors, in determining the extent to which a claimant's symptoms limit

his capacity for work. See 20 C.F.R. § 404.1529(c). Here, the ALJ appropriately considered

Gerald's minimal daily activities, including using the computer to play games at the library and

volunteering for the Rescue Mission. The ALJ did not ignore evidence limiting these activities or

use them as a basis for his conclusion that Gerald can perform work.  Rather, the ALJ considered

Gerald's activities together with his medical evidence and the various physician opinions, as a

means of evaluating the intensity, persistence and limiting effects of Gerald's symptoms.  See

Arakas, 983 F.3d at 99 ("In evaluating the intensity, persistence, and limiting effects of a

claimant's symptoms, ALJs may consider the claimant's daily activities.") (citing 20 C.F.R

§ 404.1529(c)(3)(i)). Thus, the ALJ appropriately considered Gerald's activities as one factor in

determining the extent to which symptoms affected his capacity to work. See e.g. Wooten v.

Berryhill, No. 1:17-CV-190-DCK, 2018 WL 3014412, at *5 (W.D.N.C. June 15, 2018) (noting

that, "[i]nstead of simply equating an ability to perform daily activities with an ability to [work],

the ALJ used evidence of Plaintiff's daily activities as just one factor in his ultimate RFC

determination"); Heyward v. Berryhill, No. 8:16-CV-03003-JMC, 2018 WL 1417526, at *5

(D.S.C. Mar. 21, 2018) (finding that the ALJ did not err in considering plaintiff's activities

of daily living, as 20 C.F.R. § 404.1529(c)(3)(i) provides that "claimant's daily activities is one

factor the ALJ will consider when evaluating a claimant's symptoms, including pain").

A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective

statements and should not interfere with that assessment where the evidence in the record

supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984).

Further, a reviewing court will defer to the ALJ's credibility finding except in those

"exceptional" cases where the determination is unclear, unreasonable, contradicts other findings

of fact, or is based on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc.

Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007,

1011 (4th Cir. 1997)). The ALJ's opinion was thorough and applied the proper legal standard,

and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Gerald's subjective complaints with substantial evidence.

### CONCLUSION

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Gerald's motion for summary judgment and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: June 16, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge